UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOHN SMITH and RICHARD BECKER,<br><br>  Plaintiffs,<br><br>vs.<br><br>AETNA INC., AETNA HEALTH INC., AETNA SPECIALTY PHARMACY, LLC, ABC CORPORATIONS 1-10, XYZ INDIVIDUALS 1-10 and JOHN DOE VENDOR,,<br><br>  Defendant. | Civil Action No.: 2:17-cv-12668<br><br>**(Document Electronically Filed)** |

## SECOND AMENDED COMPLAINT

Plaintiffs, John Smith and Richard Becker (collectively, "Plaintiffs"), bring this action seeking injunctive relief, compensatory and punitive damages, counsel fees and costs against Defendants, Aetna Inc., Aetna Health, Inc., Aetna Specialty Pharmacy (kcollectively, "Aetna"), ABC Corporations 1-10, XYZ Individuals 1-10 and John Doe Vendor (collectively, "Defendants"), and in support thereof, allege as follows:

## NATURE OF THE ACTION

1. In New Jersey, identifying, diagnosing and treating Human Immunodeficiency Virus ("HIV") – the virus that causes Acquired Immune Deficiency Syndrome ("AIDS") – is a vitally important public policy. As a result, the New Jersey Legislature passed the New Jersey Aids Assistance Act, N.J.S.A. 26:5C-1 *et seq.* ("NJAAA"), which provides individuals living with HIV or taking preventative HIV medication a heightened level of protection with respect to the disclosure of health information. Indeed, the NJAAA strictly limits medical providers, insurance carriers, social

service agencies and any other person or entity from disclosing HIV-related information except in limited circumstances.

2. In this action, Plaintiffs seek injunctive relief, compensatory and punitive damages, counsel fees and costs arising out of Aetna's flagrant violation of their statutory right to privacy and common law rights. Simply put, Aetna unlawfully disseminated confidential and highly sensitive HIV-related information by sending Plaintiffs a letter in a transparent, large-window envelope that made it plainly visible to anyone handling the letter that the recipient takes HIV medications.

3. At best, this was grossly reckless, careless and negligent behavior, the result of which would cause reasonably foreseeable harm to Plaintiffs. At worst, this was willful and wanton behavior aimed at retaliating against Plaintiffs for participating in a prior class action lawsuit against Aetna. In either case, Aetna has committed severe statutory and common law violations for which Plaintiffs are entitled to significant remedies, both legal and equitable.

## PARTIES

4. At all relevant times, Plaintiffs John Smith ("Smith") and Richard Becker ("Becker") were residents of Essex County, New Jersey. To protect their privacy, Plaintiffs are using pseudonyms in this action.[1]

5. Defendant, Aetna Inc. ("Aetna Company"), is a corporation organized under the laws of the Commonwealth of Pennsylvania with a principal place of business at 151 Farmington Avenue, Hartford, Connecticut.

6. Defendant, Aetna Health, Inc. ("Aetna Health"), is a corporation organized under the laws of the State of New Jersey with a principal place of business at 55 Lane Road, Fairfield, New Jersey 07004. Aetna Health is part of the Aetna Company brand, *i.e.* a group of managed care

---

[1] Due to the highly-sensitive nature of this case, Plaintiffs will file a motion seeking permission to proceed under these pseudonyms because they have a reasonable fear of severe harm should their identity be revealed. Plaintiffs also will file a motion seeking a protective order so that certain aspects of this case can be filed under seal. See, e.g., Doe v. Tris

companies consisting of plans providing healthcare coverage to members and their dependents in the State of New Jersey.

7. Defendant, Aetna Specialty Pharmacy, LLC ("Aetna Pharmacy"), is a limited liability company organized under the laws of the State of Delaware. Among other things, Aetna Pharmacy fills prescriptions for specialty drugs for members and their dependents of Aetna Company and/or Aetna Health.

8. Defendants, ABC Corporations 1-10, are fictitiously named entities, the identity and location of which are presently unknown. These defendants are corporations, partnerships and/or other business entities which conducted business in the State of New Jersey; were involved in the discussion, disclosure, mailing and/or presenting of private medical information regarding Plaintiffs; and which otherwise engaged in the invasion of privacy alleged in this action. Plaintiffs reserve the right to amend this pleading upon obtaining the identity, location and culpable conduct of these business entities.

9. Defendants, XYZ Individuals 1-10, are fictitiously named individuals, the identity and location of which are presently unknown. These individuals conducted business in the State of New Jersey; were involved in the discussion, disclosure, mailing and/or presenting of private medical information regarding Plaintiffs; and otherwise engaged in the invasion of privacy alleged in this action. Plaintiffs reserve the right to amend this pleading upon obtaining the identity, location and culpable conduct of these individuals.

10. Defendant, John Doe Vendor, is a fictitiously named individual or entity, the identity and location of which is presently unknown. Upon information and belief, this defendant is the unidentified vendor that Aetna used to send the unlawful mailing that is the subject of this action.

---

Comprehensive Mental Health, Inc., 298 N.J. Super. 677, 682-83 (App. Div. 1996) (holding that revealing Doe's HIV status in conjunction with harm to his reputation was sufficient to overcome presumption against open trials).

Plaintiffs reserve the right to amend this pleading upon obtaining the identity, location and culpable conduct of this individual and/or entity.

11. Defendants acted by and through their respective agents, servants, employees, officers, directors or others, actual and/or apparent, all of whom were acting within the scope of their employment, duties or agency, actual and/or apparent.

**FACTS COMMON TO ALL COUNTS**

**I. The HIV Privacy Laws**

12. While the first AIDS case was identified approximately 40 years ago, people living with this disease are still often treated as outcasts in society.

13. To protect people with AIDS or the HIV virus from the threat of public embarrassment, humiliation and/or outright discrimination, many states have enacted laws that protect the confidentiality of a person's HIV-related information.

14. These laws also encourage people who have been, or might be, infected with AIDS or the HIV virus to safely come forward for testing and treatment.

15. New Jersey has joined many of its sister states in enacting this type of law, known as the New Jersey Aids Assistance Act, N.J.S.A. 26:5C-1, *et seq.* ("NJAAA").

16. By its express terms, the NJAAA states that the "identification, diagnosis, care and treatment" of HIV "is of paramount public importance."

17. The NJAAA restricts health care providers, social service workers, third-party payers and any other person or institution from disclosing HIV-related information except in extremely narrow circumstances. See N.J.S.A. 26:5C-7 to 13.

18. The NJAAA permits any "person who has or is suspected of having . . . HIV infection who is aggrieved as a result of a violation of this act" to "commence a civil action against the

individual or institution who committed the violation" to obtain relief including compensatory damages, equitable relief, reasonable counsel fees and costs. See N.J.S.A. 26:5C-14.

19. The NJAAA further states that punitive damages may be awarded when the violations evidence wantonly reckless conduct by the person or institution who committed the violations. See N.J.S.A. 26:5C-14.

20. Federal laws, such as the Health Insurance Portability and Accountability Act of 1996 ("HIPPA"), also recognize the importance of privacy rights that individuals have over their sensitive medical information.

21. These laws establish a standard of care with respect to a custodian's responsibility to safeguard and protect the privacy of an individual's medical information.

## II. The Aetna HIV Medication Lawsuits

22. Aetna and its subsidiaries, affiliates and related entities are managed care companies that provide healthcare coverage to members and their dependents in several states, including New Jersey.

23. The healthcare coverage Aetna provides to members and their dependents includes coverage for HIV medications.

24. In 2014 and 2015, Aetna was sued in two separate class action lawsuits, in which the plaintiffs alleged Aetna jeopardized the privacy of people taking HIV medication by requiring its insured to receive it through the mail.

25. These two class action lawsuits were entitled Doe v. Aetna, Inc., No. 14-cv-2986 (S.D. Cal. 2014) and Doe v. Coventry Health Care, Inc., No. 15-cv-62685 (S.D. Fla. 2015) (collectively, the "Doe Actions").

26. Ultimately, the plaintiffs in the Doe Actions did not obtain class certification. Instead, Aetna settled with them individually.

27. As a condition of the individual settlements, Aetna agreed to send a written notice to all of its insured who had been required to mail-order HIV medications stating that they were no longer required to do so.

28. Aetna also agreed to pay up to $295,000.00 in damages to individuals who incurred extra expenses due to Aetna's mail-order policies.

29. The settlement of the Doe Actions was not a class action settlement and thus did not release any claims besides those of the individual plaintiffs. This settlement was not presented to either court for approval.

### III. Aetna And Its Mailing Vendor Violate The Privacy Rights Of Approximately 12,000 People, Including Hundreds Of New Jersey Residents

30. Pursuant to the settlement agreement in the Doe Actions, Aetna provided contact information for approximately 12,000 individuals to a third party, John Doe Vendor.

31. In addition, Aetna provided John Doe Vendor with its insured's personal HIV-related information and instructed it to process the mailing and send out the required notices.

32. Over 600 of these insured were New Jersey residents, including Plaintiffs.

33. Aetna never sought or received a court order allowing it to disclose this information to John Doe Vendor.

34. While the courts in the Doe Actions permitted certain disclosures to vendors for litigation purposes, neither court held a hearing nor made a finding of "good cause" to release such highly-sensitive and confidential information to third parties, as required in New Jersey.

35. In the course of sending out these notices, Defendants failed to recognize the dangers associated with sending information about HIV medications through the mail.

36. Rather than send this notice – which contained instructions for how people taking HIV medications could fill their prescriptions – in an opaque envelope, Defendants instead sent this highly sensitive information in an envelope with a large transparent glassine window.

37. To make matters exceedingly worse, the instructions were plainly visible through the large-window section of the envelope. As shown in the photograph below, from the outside each of the letters states that the notice was from Aetna, includes the recipient's name and address, a claims number and notes that the "purpose of the letter is to advise you of the options . . . Aetna health plan when filling prescriptions for HIV Med …[.]"



.

38. Defendants easily could have avoided this unlawful disclosure of sensitive HIV-related information.

39. For example, Defendants could have used the industry-standard practice of protecting the contents of the envelope by using a blank cover page that contained only the recipient's name and address.

40. Defendants also could have used an envelope that did not have a glassine window, or exercised reasonable care to ensure that the text of the letter could not be viewed through the transparent part of the envelope.

41. Defendants took none of these basic steps to protect the confidentiality of this HIV-related information. As a result, anyone handling the mail could read that the recipient was taking HIV medication without even opening the envelope.

42. Aetna's failure to properly instruct and/or supervise John Doe Vendor in the mailing of these notices was extremely reckless, and resulted in highly sensitive HIV-related information being exposed to third parties.

43. To be clear, this egregious conduct impermissibly resulted in highly sensitive, personal and confidential HIV-related information being exposed to neighbors, friends, family members, mail carriers and complete strangers.

44. As discussed in greater detail below, Plaintiffs have suffered substantial harm as a result of these statutory and common law violations, which resulted in immediate family members discovering private and highly-sensitive medical information that they would not have otherwise learned.

### IV. Plaintiff's Claims In This Action

45. On or about July 28, 2017, Defendants sent or caused to be sent to Plaintiff Smith's and Plaintiff Becker's home address in Essex County, New Jersey (the "Home Address"), two separate mailings in large-window envelopes disclosing to the general public their personal HIV medication information (collectively, the "Mailings").

46. The Mailings were separately addressed: One to John Smith and the other to Richard Becker (both fictitious designations).

47. Each contained text, visible through a large-window envelope, which displayed Plaintiff Smith's and Plaintiff Becker's full name, address and referenced the filling of prescriptions for HIV medications.

48. Plaintiffs received the Mailings at their Home Address at the end of July 2017. However, the Mailings were not received in their mailbox. Instead, the Mailings were left on the porch outside of their front door.

49. Upon information and belief, the Mailings were delivered in error to one of their neighbors. The neighbor then left the Mailings on the porch outside of the front door.

50. The Mailings were then discovered on the porch by the mother of one of the Plaintiffs, who was living with them at their Home Address.

51. Before discovering the Mailings, the mother did not have any knowledge of this confidential, private and highly sensitive HIV-related information, the discovery of which has caused severe difficulties and emotional distress within the household.

52. Plaintiff Smith is living with HIV. As a result of this reckless and otherwise unlawful mailing by Defendants, he found himself in the unexpected and uncomfortable position of disclosing that he was living with HIV.

53. Plaintiff Becker is not living with HIV, however, he takes HIV medication as part of a regimen of pre-exposure prophylaxis to prevent himself from acquiring the virus. As a result of this reckless and otherwise unlawful mailing by Defendants, he found himself in the unexpected and uncomfortable position of disclosing that he was taking medicine to protect himself from acquiring HIV.

54. These conversations led to further embarrassing and invasive discussions as to why Plaintiffs needed to protect themselves, what activities put them at risk and other topics of a private and intimate nature.

55. Plaintiffs would not have otherwise had to address these issues publicly but for the unlawful mailing by Defendants. Worse yet, these conversations have changed the nature of the relationship Plaintiffs have with their family and within their household.

56. Since receiving the Mailings, Plaintiffs have painfully noticed that their neighbors (a) avoid interacting with them and (b) speak in hushed tones while staring at them. These interactions have embarrassed and humiliated Plaintiffs.

57. In short, Defendants have recklessly, carelessly, negligently, willfully and wantonly failed to comply with their statutory and common law obligation to protect Plaintiff Smith's and Plaintiff Becker's confidential HIV-related information from disclosure.

58. As a result, Plaintiffs have sustained severe and disabling emotional distress and insult, conscious pain and suffering, permanent injury with psychological consequence, frustration, increased stress, anxiety and fear.

59. Moreover, Plaintiffs are at an increased risk for losing employment, housing, access to health care and other trauma as result of the foregoing misconduct by Defendants.

**FIRST COUNT – JOHN SMITH (FICTITIOUS DESIGNATION)**

**(VIOLATIONS OF NEW JERSEY AIDS ASSISTANCE ACT, N.J.S.A. 26:5C-1, *et seq.*)**

60. Plaintiffs incorporate by reference the preceding paragraphs and incorporate them by reference as if fully set forth herein at length.

61. On or about July 28, 2017, Defendants and/or their agents, servants, affiliates, vendors, and employees, sent or caused to be sent to Plaintiff Smith a mailing in a large-window envelope containing his private and confidential HIV-related information.

62. This mailing inappropriately disclosed Plaintiff's Smith's private and confidential HIV-related information to the general public. This information was exposed and readily viewable to anyone who had contact with the mailing.

63. This disclosure violates the NJAAA, which prohibits medical providers, insurance carriers, social service agencies and any other person or entity from disclosing HIV-related information except in limited circumstances, none of which apply here.

64. As a direct result of this NJAAA violation, Plaintiff Smith has suffered terribly, experienced severe emotional distress, suffered conscious pain, permanent injury with physiological consequence, embarrassment, humiliation, frustration, anxiety and fear.

65. Plaintiff Smith is also at an increased risk of losing employment, housing, access to health care or other trauma.

66. Plaintiff Smith has, and will in the future, be required to receive and undergo medical attention and care and to expend various sums of money and/or to incur various expenses for care and treatment as a result of the injuries he has suffered, all to his great detriment and loss.

67. Plaintiff Smith has sustained an impairment of his earning capacity and power, all to his great detriment and loss.

68. Plaintiff Smith has in the past incurred and will in the future continue to incur other financial losses or expenses, all to his great detriment and loss.

69. Plaintiff Smith has in the past suffered and will in the future continue to suffer great pain, suffering, agony and mental anguish, all to his great detriment and loss.

70. Because Defendants engaged in conduct that was wantonly reckless, Plaintiff Smith is entitled to punitive damages.

**SECOND COUNT – RICHARD BECKER (FICTITIOUS DESIGNATION)**
**(VIOLATIONS OF NEW JERSEY AIDS ASSISTANCE ACT, N.J.S.A. 26:5C-1,** *et seq.***)**

71. Plaintiffs incorporate by reference the preceding paragraphs and incorporate them by reference as if fully set forth herein at length.

72. On or about July 28, 2017, Defendants and/or their agents, servants, affiliates, vendors, and employees, sent or caused to be sent to Plaintiff Becker a mailing in a large-window envelope containing his private and confidential HIV-related information.

73. This mailing inappropriately disclosed Plaintiff's Becker's private and confidential HIV-related information to the general public. This information was exposed and readily viewable to anyone who had contact with the mailing.

74. This disclosure violates the NJAAA, which prohibits medical providers, insurance carriers, social service agencies and any other person or entity from disclosing HIV-related information except in limited circumstances, none of which apply here.

75. As a direct result of this NJAAA violation, Plaintiff Becker has suffered terribly, experienced severe emotional distress, suffered conscious pain, permanent injury with physiological consequence, embarrassment, humiliation, frustration, anxiety and fear.

76. Plaintiff Becker is also at an increased risk of losing employment, housing, access to health care or other trauma.

77. Plaintiff Becker has, and will in the future, be required to receive and undergo medical attention and care and to expend various sums of money and/or to incur various expenses for care and treatment as a result of the injuries he has suffered, all to his great detriment and loss.

78. Plaintiff Becker has sustained an impairment of his earning capacity and power, all to his great detriment and loss.

79. Plaintiff Becker has in the past incurred and will in the future continue to incur other financial losses or expenses, all to his great detriment and loss.

80. Plaintiff Becker has in the past suffered and will in the future continue to suffer great pain, suffering, agony and mental anguish, all to his great detriment and loss.

81. Because Defendants engaged in conduct that was wantonly reckless, Plaintiff Becker is entitled to punitive damages.

## THIRD COUNT – JOHN SMITH (FICTITIOUS DESIGNATION)

### (INVASION OF PRIVACY)

82. Plaintiffs incorporate by reference the preceding paragraphs and incorporate them by reference as if fully set forth herein at length.

83. On or about July 28, 2017, Defendants and/or their agents, servants, affiliates, vendors, and employees, sent or caused to be sent to Plaintiff Smith a mailing in a large-window envelope containing his private and confidential HIV-related information.

84. This mailing inappropriately disclosed Plaintiff's Smith's private and confidential HIV-related information to the general public. This information was exposed and readily viewable to anyone who had contact with the mailing.

85. This disclosure was negligent, careless, reckless, willful and wanton, and constituted an unlawful invasion of Plaintiff Smith's privacy.

86. The disclosure of Plaintiff Smith's private and highly-sensitive medical information was of no legitimate concern to the public, was highly offensive to him, and would, in fact, be offensive to anyone in his position.

87. As a direct result of this unlawful invasion of privacy, Plaintiff Smith has suffered terribly, experienced severe emotional distress, suffered conscious pain, permanent injury with physiological consequence, embarrassment, humiliation, frustration, anxiety and fear.

88. Plaintiff Smith is also at an increased risk of losing employment, housing, access to health care or other trauma.

89. Plaintiff Smith has, and will in the future, be required to receive and undergo medical attention and care and to expend various sums of money and/or to incur various expenses for care and treatment as a result of the injuries he has suffered, all to his great detriment and loss.

90. Plaintiff Smith has sustained an impairment of his earning capacity and power, all to his great detriment and loss.

91. Plaintiff Smith has in the past incurred and will in the future continue to incur other financial losses or expenses, all to his great detriment and loss.

92. Plaintiff Smith has in the past suffered and will in the future continue to suffer great pain, suffering, agony and mental anguish, all to his great detriment and loss.

### FOURTH COUNT – RICHARD BECKER (FICTITIOUS DESIGNATION)
### (INVASION OF PRIVACY)

93. Plaintiffs incorporate by reference the preceding paragraphs and incorporate them by reference as if fully set forth herein at length.

94. On or about July 28, 2017, Defendants and/or their agents, servants, affiliates, vendors, and employees, sent or caused to be sent to Plaintiff Becker a mailing in a large-window envelope containing his private and confidential HIV-related information.

95. This mailing inappropriately disclosed Plaintiff's Becker's private and confidential HIV-related information to the general public. This information was exposed and readily viewable to anyone who had contact with the mailing.

96. This disclosure was negligent, careless, reckless, willful and wanton, and constituted an unlawful invasion of Plaintiff Becker's privacy.

97. The disclosure of Plaintiff Becker's private and highly-sensitive medical information was of no legitimate concern to the public, was highly offensive to him, and would, in fact, be offensive to anyone in his position.

98. As a direct result of this unlawful invasion of privacy, Plaintiff Becker has suffered terribly, experienced severe emotional distress, suffered conscious pain, permanent injury with physiological consequence, embarrassment, humiliation, frustration, anxiety and fear.

99. Plaintiff Becker is also at an increased risk of losing employment, housing, access to health care or other trauma.

100. Plaintiff Becker has, and will in the future, be required to receive and undergo medical attention and care and to expend various sums of money and/or to incur various expenses for care and treatment as a result of the injuries he has suffered, all to his great detriment and loss.

101. Plaintiff Becker has sustained an impairment of his earning capacity and power, all to his great detriment and loss.

102. Plaintiff Becker has in the past incurred and will in the future continue to incur other financial losses or expenses, all to his great detriment and loss.

103. Plaintiff Becker has in the past suffered and will in the future continue to suffer great pain, suffering, agony and mental anguish, all to his great detriment and loss.

## FIFTH COUNT – JOHN SMITH (FICTITIOUS DESIGNATION)
## (NEGLIGENCE)

104. Plaintiffs incorporate by reference the preceding paragraphs and incorporate them by reference as if fully set forth herein at length.

105. Defendants possessed Plaintiff Smith's private and highly sensitive medical information, including HIV-related information.

106. This HIV-related information was protected by the laws of the State of New Jersey and the United States, such that Defendants had a duty to protect it from disclosure and take reasonable steps to safeguard it.

107. Defendants owed a further duty of care to Plaintiff Smith because he was a foreseeable and probable victim of engaging in the unlawful conduct outlined above, *i.e.* sending out a written notice disclosing HIV-related information that was visible from the outside of a large window envelope.

108. Defendants failed to exercise reasonable care in protecting Plaintiff Smith's medical information by engaging in this conduct. Defendants knew or should have known of the risks inherent in disseminating highly personal and confidential, HIV-related medical information of Plaintiff Smith in a transparent large-window envelope.

109. These actions by Defendants were negligent and careless, and further consisted a wanton and reckless disregard for the security and confidentiality of Plaintiff Smith's HIV-related medical information.

110. As a direct and proximate result of negligent and careless conduct, Plaintiff Smith has suffered terribly, experienced severe emotional distress, suffered conscious pain, permanent injury with physiological consequence, embarrassment, humiliation, frustration, anxiety and fear.

111. Plaintiff Smith is also at an increased risk of losing employment, housing, and access to health care and other trauma.

112. Plaintiff Smith has, and will in the future, be required to receive and undergo medical attention and care and to expend various sums of money and/or to incur various expenses for care and treatment as a result of the injuries he has suffered, all to his great detriment and loss.

113. Plaintiff Smith has sustained an impairment of his earning capacity and power, all to his great detriment and loss.

114. Plaintiff Smith has in the past incurred and will in the future continue to incur other financial losses or expenses, all to his great detriment and loss.

115. Plaintiff Smith has in the past suffered and will in the future continue to suffer great pain, suffering, agony and mental anguish, all to his great detriment and loss.

## SIXTH COUNT – RICHARD BECKER (FICTITIOUS DESIGNATION)
## (NEGLIGENCE)

116. Plaintiffs incorporate by reference the preceding paragraphs and incorporate them by reference as if fully set forth herein at length.

117. Defendants possessed Plaintiff Becker's private and highly sensitive medical information, including HIV-related information.

118. This HIV-related information was protected by the laws of the State of New Jersey and the United States, such that Defendants had a duty to protect it from disclosure and take reasonable steps to safeguard it.

119. Defendants owed a further duty of care to Plaintiff Becker because he was a foreseeable and probable victim of engaging in the unlawful conduct outlined above, *i.e.* sending out a written notice disclosing HIV-related information that was visible from the outside of a large window envelope.

120. Defendants failed to exercise reasonable care in protecting Plaintiff Becker's medical information by engaging in this conduct. Defendants knew or should have known of the risks inherent in disseminating highly personal and confidential, HIV-related medical information of Plaintiff Becker in a transparent large-window envelope.

121. These actions by Defendants were negligent and careless, and further consisted a wanton and reckless disregard for the security and confidentiality of Plaintiff Becker's HIV-related medical information.

122. As a direct and proximate result of negligent and careless conduct, Plaintiff Becker has suffered terribly, experienced severe emotional distress, suffered conscious pain, permanent injury with physiological consequence, embarrassment, humiliation, frustration, anxiety and fear.

123. Plaintiff Becker is also at an increased risk of losing employment, housing, access to health care or other trauma.

124. Plaintiff Becker has, and will in the future, be required to receive and undergo medical attention and care and to expend various sums of money and/or to incur various expenses for care and treatment as a result of the injuries he has suffered, all to his great detriment and loss.

125. Plaintiff Becker has sustained an impairment of his earning capacity and power, all to his great detriment and loss.

126. Plaintiff Becker has in the past incurred and will in the future continue to incur other financial losses or expenses, all to his great detriment and loss.

127. Plaintiff Becker has in the past suffered and will in the future continue to suffer great pain, suffering, agony and mental anguish, all to his great detriment and loss.

**WHEREFORE,** Plaintiffs demand judgment in their favor and against Defendants, jointly and severally, for the following relief:

(a) awarding permanent injunctive relief to Plaintiffs, restraining and enjoining Defendants from disclosing their confidential, private, highly sensitive HIV-related medical information to the general public or any third parties in violation of the NJAAA and the common law;

(b) awarding compensatory damages to Plaintiffs;

(c) awarding punitive damages to Plaintiffs;

(d) awarding Plaintiffs counsel fees and costs under the NJAAA; and

(e) such other relief as this Court may deem just and proper.

**BRACH EICHLER LLC**

BY: */s/ Charles X. Gormally, Esq.*
       Charles X. Gormally, Esq.

*Attorneys for Plaintiffs*

Dated: January 17, 2018

## DEMAND FOR TRIAL BY JURY

Plaintiffs hereby demand a trial by jury as to all issues.

## DESIGNATION OF TRIAL COUNSEL

Charles X. Gormally, Esq., is hereby designated as trial counsel on behalf of Plaintiffs.

## CERTIFICATION PURSUANT TO LOCAL CIVIL RULE 11.2

Pursuant to Local Civil Rule 11.2, the undersigned hereby certifies that a lawsuit arising out of similar facts is currently pending in the United States District Court for the Eastern District of Pennsylvania, entitled *Beckett v. Aetna, Inc., et al.*, Case Number 2:17-cv-03864, although the state law governing that action differs from this one. I also understand that there may be additional similar lawsuits filed in other jurisdictions; however, I am unable to presently identify the court(s) and docket number(s) for these actions. Other than the parties set forth in this pleading, I know of no other parties that should be joined in the above action. I also certify that the facts contained in this pleading are true and correct to the best of my knowledge and belief. If any of the statements made by me are willfully false, I am subject to punishment.

**BRACH EICHLER LLC**

BY: */s/ Charles X. Gormally, Esq.*
Charles X. Gormally, Esq.

*Attorneys for Plaintiffs*

Dated: January 17, 2018